1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CURTIS SAUNDERS,

              Plaintiff,

    v.

SUNRUN, INC.,

              Defendant.

Case No.  19-cv-04548-HSG

**ORDER DENYING MOTION TO DISMISS, DENYING MOTION TO STAY, AND AWARDING COSTS**

Re: Dkt. No. 31

Defendant Sunrun, Inc. ("Sunrun") moves to dismiss Plaintiff Curtis Saunders's class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative to stay the case pending payment of costs pursuant to Rule 41(d).  Dkt. No. 31 ("Mot.").  Briefing on the motion is complete.  *See* Dkt. Nos. 38 ("Opp."), 42 ("Reply").  Plaintiff alleges two causes of action: violations of (1) the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; and (2) the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 632.7.  Dkt. No. 1 ("Compl.") at ¶¶ 3, 6.  For the reasons articulated below, the Court **AWARDS** costs, **DENIES** Defendant's motions to dismiss the Complaint, **DENIES** Defendant's motion to stay pending payment of costs, and **STAYS** the CIPA claim pending the California Supreme Court's review of *Smith v. LoanMe, Inc.*, 43 Cal. App. 5th 844, 848 (Cal. Ct. App. 2019).

## I.   BACKGROUND

### A.   The Instant Case

On August 8, 2019, Plaintiff filed a class action complaint on behalf of a putative nationwide class, alleging that Sunrun had "sen[t] unauthorized text message advertisements to consumers' cellular telephones" and "record[ed] sales calls without obtaining proper advance consent."  Compl. at 2.

Sunrun is a "national retailer and servicer of residential solar power systems" with its "principal place of business located in San Francisco, California." *Id.* at ¶¶ 1, 10.  Plaintiff submitted an inquiry to Sunrun "attempt[ing] to get a quote about [its] solar products" some time in or prior to October 2018.  *See id.* at ¶ 29.  In October 2018, "[Sunrun] placed a call to Plaintiff's cell phone to follow up on his [inquiry]." *Id.*  During the call, Plaintiff "inform[ed] [Sunrun] that he did not consent to receive any text message communications from [Sunrun]." *Id.* at ¶ 33.  Nevertheless, "shortly thereafter [he] received the [following] two automated and generic text messages" from Sunrun:

> Thanks for your interest in Sunrun! Next step: Please send over your electric bills. We'll use this history to estimate your solar savings.
>
> To share your utility usage and bill history with Sunrun, please follow the below link: http://mysunrun.com/#/share-energy-usage?opptyId=0060d00001sLk8HAAS&email=curtiss@nedco.com&zipCode=89128&providerId=1662[.]

*Id.* at ¶ 34.  According to Plaintiff, these were "telemarketing text messages" which "[Sunrun] sent . . . through the use of an automated telephone dialing system" (ATDS).  *Id.* at ¶ 35.

Plaintiff further alleges that Sunrun "automatically recorded" the phone call "from the outset of the call," without first informing him that the call was being recorded.  *Id.* at ¶¶ 30–31.

Plaintiff seeks relief on behalf of two nationwide classes, consisting of (1) "[a]ll persons in the United States and its Territories who, within the last four years, received one or more telemarketing text messages from Defendant on their cellular telephone after communicating to Defendant that it did not have consent to send text messages to that telephone number"; and (2) "[a]ll persons in the United States and its Territories who, within one year prior to the filing of this Complaint, received a phone call from Defendant on their cellular telephone regarding the sale of its products or services and which was recorded without their consent being obtained at the outset of the call." *Id.* at ¶ 39.

**B.    The Prior Action**

On April 2, 2019, Saunders filed an action in the Circuit Court of Cook County, Illinois (the "Prior Action").  *See* Dkt. No. 31-2.  Sunrun removed that action to the United States District Court for the Northern District of Illinois, Eastern Division.  *See Saunders v. Sunrun, Inc.*, No. 19-

cv-03127 (N.D. Ill.).  Sunrun informed Plaintiff that it intended to file a motion to dismiss the action for lack of personal jurisdiction, but before it could do so, Plaintiff "voluntarily dismissed" the Illinois suit.  *Id.*

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim."  *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

United States District Court
Northern District of California

### B. Rule 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)), and without "presum[ing] the truthfulness of the plaintiff's allegations," *id.* (citing *White*, 227 F.3d at 1242).

### C. Rule 41(d)

Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). Rule 41(d) was intended to deter "forum shopping and vexatious litigation" and gives federal courts broad discretion to order the payment of costs, and to stay cases, though neither is mandatory. *Millman v. Wilmington Sav. Fund Soc'y, FSB*, Case No. 17-cv-04123-EMC, 2018 WL 2021236, at *2 (N.D. Cal. May 1, 2018) (quoting *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996)). "[C]osts have been imposed only in cases where the plaintiff has brought an identical, or nearly identical, claim and requested identical, or nearly identical, relief." *Garza v. Citigroup Inc.*, 311 F.R.D. 111, 114–115 (D. Del. 2015), *aff'd*, 881 F.3d 277 (3rd Cir. 2018).

## III. DISCUSSION

Defendant argues that (1) Plaintiff fails to state a claim under the TCPA because his own allegations make clear that he consented to the text messages; and (2) Plaintiff lacks standing to bring a CIPA claim and fails to state a claim under CIPA; or, in the alternative, (3) the Court

United States District Court
Northern District of California

4

should stay the case until Plaintiff pays costs incurred by Defendant in the Prior Action, including attorney's fees.  The Court addresses each argument in turn.

### A.   TCPA

Congress enacted the TCPA "to protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2012).  To state a claim under the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii).  A text message constitutes a "call" for purposes of the TCPA.  *See Satterfield*, 569 F.3d at 954.  As to the third element, "[t]he type of consent required depends on the content of the message."  *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1261 (N.D. Cal. 2018).  If the text message "includes or introduces an advertisement or constitutes telemarketing," the sender must obtain "prior express written consent" of the recipient.  47 C.F.R. §§ 64.1200(a)(1)–(2).

### i.   Advertising/Telemarketing

Sunrun first argues that the two text messages Plaintiff alleges he received do not constitute telemarketing or advertising because Plaintiff "request[ed] . . . information about Sunrun's solar products."  Mot. at 10.

Generally, an "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services."  47 C.F.R. § 64.1200(f)(1).  "Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  *Id.* at § 64.1200(f)(12).  The FCC has found that text messages that fulfills a consumer request—even to provide a discount or coupon for a future purchase—"do[] not constitute a telemarketing communication."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8016 (2015) (hereinafter "2015 FCC Order").  Rather, "the on-demand text sent by retailers . . . [is in] fulfillment of the consumer's request to receive the text." *Id.* at 8015.  Similarly, numerous courts have found texts sent in response to a commercial

United States District Court
Northern District of California

1    transaction or plaintiff's request do not to constitute advertising or telemarketing.  *See e.g.*, *An*

2    *Phan*, 351 F. Supp. 3d at 1265 (finding that a text confirming plaintiff's travel booking did not

3    constitute telemarketing); *Mackinnon v. Hof's Hut Restaurants, Inc.*, Case No. 17-cv-01456-JAM-

4    DB, 2017 WL 5754308, at •2 (E.D. Cal. Nov. 28, 2017), (finding a text message confirming

5    plaintiff's dinner reservation was not an advertisement); *Wick v. Twilio Inc.*, Case No. 16-cv-

6    00914-RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) (finding that a text message

7    responding to online form filled out by plaintiff did not constitute telemarketing).

8         Plaintiff makes no counterargument in his Opposition brief and instead argues that he

9    "express[ed] his desire not to receive" any further text messages during the call.  *See* Opp. at 4–5.

10   However, Plaintiff jumps ahead to the next step of the analysis.  While the Complaint

11   characterizes the text messages as "advertisements" and "telemarketing," it does so in conclusory

12   fashion, without any additional facts to support such characterizations.  Compl. ¶¶ 2, 35.

13   Additionally, Plaintiff alleges

14        when [Sunrun] receives a customer contact inquiring about its solar
          products, [Sunrun] contacts the customer to follow up and attempt to
15        sell its solar products and services by live voice call placed by its call
          agents.
16

17        During these recorded calls, Defendant sends automated text
          messages to the customer's cell phone about its products and services
18        and asking for information to proceed with the sales process.

19   *Id.* at ¶¶ 25, 27.  Plaintiff's allegations make clear that the text messages were sent in response to

20   Plaintiff's inquiry and were sent in "fulfillment of the consumer's request."  *See* 2015 FCC Order,

21   30 FCC Rcd at 8015.  Accordingly, the Court agrees with Sunrun that Plaintiff's allegations make

22   clear that the text messages did not constitute telemarketing or advertising.[1]

23        **ii.    Consent**

24

25

26   ─────────────────────

27   [1] Although Sunrun appears to argue that the Complaint must be dismissed on this ground alone,
     the Court disagrees.  *See* Reply at 3.  Instead, whether the text messages constitute telemarketing
     or advertising is relevant to determine whether the element of consent has been properly pled at
28   this stage of the proceedings.  *See, e.g.*, *An Phan*, 351 F. Supp. 3d at 1265 (proceeding with a
     consent analysis despite concluding the text messages at issue did not constitute telemarketing).

United States District Court
Northern District of California

1    Because the text messages did not constitute advertising or telemarketing messages,

2    Sunrun needed only Plaintiff's express consent prior to sending the messages.  Here, there appears

3    to be no dispute that Sunrun received such consent because Plaintiff voluntarily provided his

4    phone number "to follow up on [Plaintiff's] attempt to get a quote about Defendant's solar

5    products and services."  Compl. at ¶ 29; *see also Aderhold v. car2go N.A. LLC*, 668 F. App'x 795,

6    796 (9th Cir. 2016) ("The [FCC] has determined that 'persons who knowingly release their phone

7    numbers have in effect given their invitation or permission to be called at the number which they

8    have given, absent instructions to the contrary.'") (quoting  *In re Rules & Regulations*

9    *Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769

10   (Oct. 16, 1992).  However, "[c]onsumers have a right to revoke consent, using any reasonable

11   method including orally or in writing," 2015 FCC Order, 30 FCC Rcd. at 7996, and "text

12   messages sent after consent is revoked violate the TCPA, *Reardon v. Uber Techs., Inc.*, 115 F.

13   Supp. 3d 1090, 1102 (N.D. Cal. 2015).

14   Plaintiff argues that he revoked his consent during the call when he "specifically

15   inform[ed] Defendant that he did not consent to receive any text message communications from

16   Defendant."  Compl. at ¶ 33.  Despite this communication, "shortly thereafter Plaintiff received

17   the two automated" text messages at issue.  *Id.*  Sunrun argues that any attempt to revoke consent

18   during the phone call was not "reasonable" because Plaintiff received the text messages "while . . .

19   [the] call was in progress."  Reply at 5.[2]  Whether the messages were sent shortly after the alleged

20   revocation or were sent during the call is a question of fact that cannot be resolved at the motion to

21   dismiss stage.  The Court must read the pleadings in the light most favorable to Plaintiff, and he

22   has sufficiently pled that Sunrun sent him the messages after he had revoked consent.

23   Accordingly, Plaintiff has sufficiently pled that Sunrun did not have his consent to send the

24   text messages at issue.  Defendant's motion to dismiss Plaintiff's TCPA claim is **DENIED**.

25

26   _____

27   [2] The Court disagrees with Defendant's argument that Plaintiff is seeking to introduce a new argument or amend his Complaint by arguing that he revoked his consent.  Reply at 4.  The Complaint clearly alleges that Plaintiff told the call agent that he did not wish to receive text messages from Defendant.  *See* Compl. at ¶ 33.  This allegation provides sufficient basis for Plaintiff's argument.

28

### B.   CIPA

Sunrun next argues that the Court should dismiss Plaintiff's CIPA claim because he lacks standing and fails to state a claim.  Mot. at 12–14.

#### i.   Article III Standing

Article III of the Constitution limits federal jurisdiction to "cases and controversies."  *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is an essential element for a court to have federal subject matter jurisdiction over a "case or controversy."  *Id*.  A plaintiff must have: (1) suffered an injury in fact; (2) that is fairly traceable to the defendant; and (3) is likely to be redressed by a favorable judicial decision.  *Id*. at 560–61.  To establish "injury in fact," a plaintiff must show that they suffered an injury or invasion of a legally protected right that is concrete and particularized and actual or imminent (not hypothetical or conjectural).  *Id*. at 560.  Even for a statutory violation, as alleged here, plaintiff must establish a concrete injury.  *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016).

Sunrun argues that Plaintiff lacks Article III standing for his CIPA claim.  Mot. at 14. Importantly, however, "violations of [p]laintiffs' statutory rights under CIPA, [even] without more, constitute injury in fact because instead of a bare technical violation of a statute, . . . a CIPA violation involves . . . a violation of privacy rights.'"  *Osgood v. Main Street Mktg., LLC*, Case. No. 16-cv-2415-GPC (BGS), 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017) (internal citation omitted); *see also Matera v. Google Inc.*, Case No. 15-cv-04062-LHK, 2016 WL 5339806, at *11 (N.D. Cal. Sept. 23, 2016).  Plaintiff here alleges that by failing "to inform Plaintiff . . . that the phone call[] would be recorded, or otherwise seek consent to record the call[], at the outset of the call[], Defendant violated Plaintiff's privacy rights.  Compl. at ¶¶ 59, 60.  This sufficiently alleges a CIPA claim.

Sunrun cites *NEI Contracting and Eng'g, Inc. v. Hanson Aggregates Pacific SW*, *Inc.* to argue that Plaintiff only alleges a procedural injury because he is simply contesting the timing of the recording disclosure.  Case No. 12-cv-01685-BAS (JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016), *aff'd* 926 F.3d 528 (9th Cir. 2019).  But this case is inapposite.  In *NEI*, the plaintiff "was not claiming an injury from invasion of privacy," and instead "admit[ted] he would

8

United States District Court
Northern District of California

have consented to the recording." *Id*. at \*5.  The *NEI* plaintiff claimed he was injured because the recording was not provided to him earlier in prior litigation. *Id*.  The court reasoned that the plaintiff was "claiming an injury because he did not keep records," and "[t]his [was] not the [type] injury that CIPA was designed to protect" against. *Id*.  In contrast, Plaintiff alleges that his "privacy rights" were violated and this allegation is sufficient to confer Article III standing.

### ii. Failure to State a Claim

Sunrun first argues that Plaintiff fails to state a claim under CIPA because he does not plausibly allege that Sunrun recorded a call with Plaintiff.  Mot. at 13.  This argument makes little sense.  The complaint clearly alleges that:

> [I]n October 2018, Defendant placed a call to Plaintiff's cell phone to follow up on his attempt to get a quote about Defendant's solar products and services.
> The call placed by Defendant was automatically recorded by Defendant from the outset of the call.
> However, during the recorded call placed by Defendant, Defendant's call agent failed to inform Plaintiff from the outset of the call that the call was being recorded and obtain his consent before proceeding with the call.

Compl. at ¶¶ 29–31.  Accordingly, the Court rejects Sunrun's first argument.

Next, Sunrun urges the Court to follow the California Court of Appeal's recent holding in *Smith v. LoanMe, Inc*., 43 Cal. App. 5th 844, 848 (Cal. Ct. App. 2019).  In *Smith*, the court held that "section 632.7 prohibits only third-party eavesdroppers from intentionally recording telephonic communications involving at least one cellular or cordless telephone," and does not "prohibit the participants in a phone call from intentionally recording it."  43 Cal. App. 5th at 848.  This decision, however, is currently on appeal to the California Supreme Court.  *See Smith v. LoanMe*, 460 P.3d 757 (Cal. 2020).  The Supreme Court's ruling is likely to address whether that statute allows participants in a phone call to record it or if it creates a viable cause of action based on the allegations in the Complaint.

Given the California Supreme Court's grant of review and forthcoming decision, the Court exercises its discretion to stay Plaintiff's CIPA claim.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants."). In deciding whether to issue a stay, the Court considers three factors: (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Addressing the first *CMAX* factor, the Court finds that little harm would result from the granting of the stay. While a stay will cause some delay, that delay will not be unfairly prejudicial. *See, e.g., Ludlow v. Flowers Foods, Inc.*, Case No. 18-cv-1190 JLS (JLB), 2020 WL 773253 at *2 (S.D. Cal. Feb. 18, 2020) ("While staying this case will certainly delay proceedings, the Court finds that because the California Supreme Court has now granted the Ninth Circuit's request and will answer the question expeditiously, any wait for an answer to this important issue would be neither indefinite nor unreasonable."). The second and third *CMAX* factors similarly favor issuing a stay until the California Supreme Court issues its ruling in *Smith*. In the event that the California Supreme Court affirms the California Court of Appeal's decision, such a decision would likely be dispositive of Plaintiff's claim. It would be a waste of judicial resources to assume how the California Supreme Court will decide the issues, or to permit further proceedings, only to have the California Supreme Court render an opposite case-dispositive conclusion.

Because issuing a stay of the CIPA claim will result in minimal harm to the parties and would reduce the waste of judicial resources, the Court will **STAY** the proceedings on Plaintiff's CIPA claim pending the California Supreme Court's decision in *Smith*. Consequently, Defendant's motion to dismiss is **DENIED**.

### C. Motion to Stay Pending Payment of Costs Pursuant to Rule 41(d)

Finally, Defendant argues that the case should be stayed pending Plaintiff's payment of costs, including attorney's fees, pursuant to Rule 41(d). Mot. at 18. Defendant asks for $18,293.60, representing $700 in filing fees and $17,5293.66 in attorney's fees. *See* Dkt. No. 31-1 ("Mazzuchetti Decl.") at ¶ 10. Plaintiff does not dispute that Defendant is entitled to reimbursement of costs, but argues that costs do not include attorney's fees. Opp. at 8-9.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Ninth Circuit has yet to directly address whether attorney's fees are part of costs under Rule 41(d).  While other Courts of Appeal have addressed the question, they have reached different conclusions: (1) "attorneys' fees may always be awarded," (2) "attorneys' fees may never be awarded," or (3) "attorneys' fees may be awarded . . . only where the underlying substantive statute defines 'costs' to include attorneys' fees."  *See Garza v. Citigroup, Inc.*, 881 F.3d 277, 281 (3rd Cir. 2018) (summarizing the holdings of the Fourth, Sixth, Seventh, and Eighth Circuits).

Within this district, courts also have been divided.  *Compare LegalForce, Inc. v. LegalZoom.com, Inc.*, Case No. 18-cv-07274-MMC, 2019 WL 1170777 at *2 (N.D. Cal. Mar. 13, 2019) *with Caldwell v. Wells Fargo Bank, N.A.*, Case No. 13-cv-01344-LHK, 2014 WL 789083, at *7 (N.D. Cal. Feb. 26, 2014) *and Nuance Commc'ns, Inc. v. Abbyy Software House*, Case No. 08-cv-2912-JSW (MEJ), 2008 WL 11383775, at *1–2 (N.D. Cal. Sept. 29, 2008), *report and recommendation adopted*, 2008 WL 11383776 (N.D. Cal. Nov. 6, 2008).  In *LegalForce*, the court found persuasive the principle that "[f]ederal courts adhere to the 'American Rule,' which recognizes that attorney's fees are not generally a recoverable cost of litigation" except where the underlying statute specifically defines costs to include attorney's fees.  2019 WL 1170777, at *2 (quoting *Esposito v. Piatrowski*, 223 F.3d 497, 500–01 (7th Cir. 2000).  In *Caldwell*, the court found persuasive an analysis of the plain language of the Federal Rules of Civil Procedure, where "costs" and "fees" are separate and distinct terms.  Finally, in *Nuance*, the court awarded attorneys' fees where plaintiff displayed tactical conduct in filing and dismissing the case in the Western District of Wisconsin, then filing the case in the Central District of California, after which it was transferred to the Northern District of California.  2008 WL 11383775, at *1–2.

Importantly, the Court need not choose which rationale it finds most persuasive.  Here, the underlying claim was brought under the TCPA, which does not provide for recovery of attorney's fees.  *See* 47 U.S.C. § 227(b)(3) (providing that a plaintiff may recover "actual monetary loss" or "receive $500 in damages for each such violation").  Additionally, there is no indication of forum shopping or vexatious litigation in this case.  Here, Plaintiff filed the prior action where his counsel lived in Cook County, Illinois, at which point Sunrun removed the action to the United States District Court for the Northern District of Illinois.  *See Saunders v. Sunrun, Inc.*, No. 19-cv-

03127 (N.D. Ill.).  After consulting with Defendant's counsel about its impending motion to dismiss the action for lack of personal jurisdiction, Plaintiff dismissed the suit and filed this action where Defendant is based.  *See* Mazzuchetti Decl. at ¶¶ 6–7.  While this may show a lack of diligence on Plaintiff's counsel's part, it does not indicate any tactical or vexatious intentions.  Therefore, the Court **AWARDS** Sunrun only the $700 in filing fees.

Given the relatively small amount at stake, the Court **DENIES** Sunrun's request for a stay on this basis.  Instead, Plaintiff is **ORDERED** to pay Sunrun the $700 by August 25, 2020.

## IV.    CONCLUSION

For the foregoing reasons, the Court **AWARDS** costs; **DENIES** Defendant's motions to dismiss the two claims; **DENIES** Defendant's motion to stay pending payment of costs; and **STAYS** the CIPA claim pending the California Supreme Court's review of *Smith v. LoanMe*, Inc., 43 Cal. App. 5th 844 (Cal. Ct. App. 2019).  The Court further sets a telephonic further case management conference for August 25, 2020 at 2:00p.m.  The parties are directed to file a revised joint case management statement by August 20, 2020.  All counsel shall use the following dial-in information to access the call: Dial-In: 888-808-6929/Passcode: 6064255.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The parties are further advised to ensure that the Court can hear and understand them clearly before speaking at length.

**IT IS SO ORDERED.**

Dated:  8/11/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

12